IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHAEL CATALANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. |
| ) | |
| GERBER COLLISION & GLASS, ) | |
| THE BOYD GROUP (U.S.) INC., d/b/a ) | |
| GERBER COLLISION & GLASS, THE ) | |
| GERBER GROUP, INC., d/b/a GERBER ) | |
| COLLISION & GLASS, and GERBER ) | |
| PAYROLL SERVICES, INC., ) | |
| d/b/a GERBER COLLISION & GLASS, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, MICHAEL CATALANO, by counsel Kightlinger & Gray, for his Complaint against Defendants, GERBER COLLISION & GLASS, THE BOYD GROUP (U.S.) INC., d/b/a GERBER COLLISION & GLASS, THE GERBER GROUP, INC., d/b/a GERBER COLLISION & GLASS, and GERBER PAYROLL SERVICES, INC., d/b/a GERBER COLLISION & GLASS, states as follows:

### Facts Common to All Counts

1. Plaintiff, MICHAEL CATALANO, is an individual, who at all times relevant to this Complaint was a resident of the state of Indiana.

2. Defendant THE BOYD GROUP (U.S.) INC., d/b/a GERBER COLLISION & GLASS, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1745 Ellice Avenue Winnipeg, Manitoba, Canada, R3H 1A6, and which, directly or through subsidiary companies, operates auto body repair shops in the State of

1

Indiana under the trade name "Gerber Collision & Glass", including repair shops in Cedar Lake, Hammond, and LaPorte.

3. Defendant, GERBER PAYROLL SERVICES, INC. d/b/a GERBER COLLISION & GLASS, is a corporation, organized and existing under the laws of the State of Delaware with its principal place of business with its principal place of business at 1745 Ellice Avenue Winnipeg, Manitoba, Canada, R3H 1A6, which processes payroll for The Boyd Group, (U.S.) Inc., and its subsidiaries, and issues payroll checks to Gerber Collision & Glass employees, including those who work or have worked at Gerber Collision & Glass' Indiana repair shops, including those in Cedar Lake, Hammond, and LaPorte.

4. Defendant THE GERBER GROUP, INC., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 400 West Grand Avenue, Elmhurst, IL, 60126, and which, directly or through subsidiary companies, manages and operates auto body repair shops in the State of Indiana under the trade name "Gerber Collision & Glass", including repair shops in Cedar Lake, Hammond, and LaPorte.

5. Defendant GERBER COLLISION & GLASS is a trade name used by THE BOYD GROUP (U.S.) INC., and its unknown subsidiary corporations and subsidiary limited liability companies in the United States, which operate auto body repair shops in the state of Indiana, including repair shops in Cedar Lake, Hammond, and LaPorte.

6. This case arises from Defendants systematic practice of misrepresenting to persons employed as repair technicians the "labor hours" charged to customers, thereby paying its repair technicians less than they were and are owed for their labor, and also thereby violating the Indiana Wage Claims Act, and Indiana and Federal statutes concerning overtime pay.

2

7. Michael Catalano brings claims for violation of the Indiana Wage Payment Act and Indiana Wage Claims Act (codified at Ind. Code § 22-2-9-1 *et seq.* and Ind. Code § 22-2-5-1 *et seq.*); the Indiana Minimum Wage Statute (codified at Ind. Code § 22-2-2-4); and violation of the Fair Labor Standards Act (codified at 29 U.S.C. § 201, *et seq*).

8. This Court has federal question jurisdiction over Plaintiff's claim for violation of the Fair Labor Standards Act (codified at 29 U.S.C. §§ 201, *et seq.*) pursuant to 28 U.S.C. § 1331.

9. Jurisdiction over the Plaintiffs' pendant state law claims is appropriate under 28 U.S.C. § 1367(a).

10. Venue is appropriate in this Court under 28 U.S.C. § 1391, because some of the Defendants below-described violations of the Fair Labor Standards Act occurred at Gerber Collision & Glass repair shops in Cedar Lake and Hammond, in Lake County, Indiana.

11. From September 26, 2016 until January 17, 2019, Michael Catalano was employed as an auto body repair technician at Gerber Collision & Glass repair shops in Cedar Lake, Hammond, and LaPorte, all in the state of Indiana. Immediately prior to his separation from employment, he worked as a repair tech at a Gerber Collision & Glass repair shop in LaPorte, Indiana.

12. Defendants, and each of them, purport to compensate persons employed as repair technicians at its Cedar Lake, Hammond and LaPorte facilities according to a compensation structure that it describes as "flat rate commission." This compensation structure is described in general terms in the paragraphs that follow.

13. When a damaged car is brought to Gerber Collision & Glass shop for repair, an estimate is written for repair of the damage. Repair estimates commonly are comprised of "labor hours", parts and other materials.

14. "Labor hours", alternatively referred to "flat rate hours", "flagged hours" and "booked hours" are units of time value, calculated in tenths of an hour, which the collision repair industry historically has used to price collision repair services. Labor hours correspond to the various tasks involved in the repair of the vehicle.

15. The term "labor hours" do not describe actual clock hours that technicians spend repairing a vehicle. Instead, these terms describe standard charges to the customer for the labor required for the various tasks involved in the repair of a vehicle. "Labor hours" are drawn from comprehensive written guides and databases of labor times, which have been developed over time by editors with automotive repair expertise.

16. Actual clock hours taken to perform a repair can be expected to vary from "labor hours", to meet individual repair shop and vehicle conditions, the equipment used, and the experience of the technician performing the repairs.

17. Once the estimate is prepared and work is authorized by the customer, the car is assigned to the shop's technicians, who perform the work. The technicians work off of "work orders" prepared by the repair shop. As the technicians complete the various aspects of the repair, they flag the hours noted on the estimate that correspond to particular tasks.

18. Once the shop's manager has certified that the tasks have been completed, he books the flagged hours, which authorizes Gerber to charge the customer for the task.

19. For those shops in the auto body repair industry that use this system to compensate repair technicians, technician compensation ordinarily is determined by multiplying

4

an individual technician's "flat rate"--which is a rate expressed in dollars per "labor hour"--by the "labor hours" actually charged to the customer for that technician's work.

20. Technician pay accordingly is directly tied to the labor hours actually charged by the shop to the customer for repairing the vehicle. That is, if a repair shop charges a customer for 2.5 "labor hours" for labor performed by the repair technician on a task, the repair technician is paid for 2.5 "labor hours", multiplied by his "flat rate".

21. During Mr. Catalano's employment with Gerber Collision & Glass, Defendants purported to follow this system in paying its repair technicians.

22. In fact, Defendants did not follow this practice. Instead, Defendants regularly and systematically underpaid Mr. Catalano the money owed to him for the work he performed. Defendants accomplished this by misrepresenting to Mr. Catalano the number of "labor hours" actually charged to customers for repairs performed by him, through a process described in the auto body repair trade as "double sheeting".

23. Attached to this Complaint as "Exhibit A" is a redacted example of a work order, number 2702011115, prepared by Gerber Collision & Glass for repairs to a 2010 Toyota Camry. The work order sets forth the "labor hours" assigned to Mr. Catalano for performing the various tasks required to repair the vehicle. For example, it shows 2.3 labor hour assigned for "Remove/Replace" of a "O/H front bumper cover", and 1.8 labor hours for "Remove/Replace" of "RT fender assy". The total "labor hours" assigned to Mr. Catalano for performing the repairs and refinishing in this example are 12.9.

24. Defendants issue work orders like the ones attached as "Exhibit A" to Mr. Catalano and other repair technicians, as instruction concerning the repairs to perform on each

vehicle. Each notation of "assigned hours" on each work order is a representation by Defendants to the repair technician concerning the "labor hours" that Gerber Collision & Glass will bill its customer for each particular task, and the corresponding number of labor hours that it will use to calculate the repair technician's pay.

25. Attached to this Complaint as "Exhibit B" is a redacted example of a Pay Sheet issued by the Defendants to Mr. Catalano. The pay sheet shows the total "labor hours" assigned to Mr. Catalano for performing the repairs and refinishing for work order number 2702011115 ("Exhibit A") as 12.9.

26. During Mr. Catalano's employment with Gerber Collision & Glass, Defendants' shop managers issued work orders to repair technicians, showing assigned labor hours with respect to various repair tasks.

27. After issuing the work orders, Defendants' shop managers regularly and systematically entered manual overrides of the labor hours assigned to various repair tasks, such that Defendants charged Gerber Collision & Glass customers for a greater number of labor hours than credited and paid to Gerber Collision & Glass repair technicians, including Mr. Catalano.

28. Defendants' shop manager would enter these manual overrides without making a corresponding notation on Mr. Catalano's work orders and pay sheets. The forgoing was carried out without the knowledge and consent of Mr. Catalano.

29. An example of this is shown in "Exhibit C" and "Exhibit D", attached hereto, which are copies of a work order issued for repair of a 2016 Nissan Sentra.

30. The labor hours assigned to the following tasks are set forth as follows on "Exhibit C":

| License bracket | .02 |
|---|---|
| RT Headlamp assy | .02 |
| Condenser assy | .06 |

31. The labor hours assigned to the same tasks, for the same vehicle, are set forth as follows on "Exhibit D":

| License bracket | .05 |
|---|---|
| RT Headlamp assy | 1.2 |
| Condenser assy | 2.2 |

32. Defendants additionally required Mr. Catalano to perform repair work on automobiles for which no work orders were submitted to him, such that Defendants charged Gerber Collision & Glass customers for a greater number of labor hours than credited and paid to Mr. Catalano.

33. The foregoing was a policy and practice of Gerber Collision & Glass, was carried out with the knowledge and consent of Gerber Collision & Glass, and was carried out by Defendants' shop managers, at the direction of Gerber Collision & Glass Market Manager, Jennifer Shepler.

34. Defendants fraudulently concealed their wrongdoing from Mr. Catalano, first by issuing inaccurate and misleading work orders and pay sheets, and then by falsely denying that it had the capability to manually override labor hours without the knowledge and consent of the repair technicians.

35. Attached to this Complaint as Exhibit E are the results of what Defendants claim is an audit that they conducted to address the disparity between the labor hours charged to

customers and the labor hours paid to Mr. Catalano during the period between June 1, 2017 and December 31, 2017, which shows a disparity of 58.6 hours, to Mr. Catalano's detriment.

36. Only after diligent efforts of Michael Catalano and, ultimately, the audit results, were Gerber Collision & Glass's unlawful actions discoverable.

37. Defendants have failed and refused to explain the audit process to Mr. Catalano, or to provide Mr. Catalano with documentation supporting the audit results. Defendants additionally have failed to conduct such an audit for the entire period of Mr. Catalano's employment, from September 26, 2016 to January 17, 2019.

38. Mr. Catalano accordingly denies that the audit results accurately reflect the disparity in labor hours between what he was paid and what was charged to customers, or that he has been fully compensated for the Defendants' admitted wrongdoing.

39. Defendants further continue to fraudulently conceal their wrongdoing from Mr. Catalano, by refusing to explain the audit process, to provide Mr. Catalano with documentation supporting the audit figures, and by refusing to conduct an audit for the full period of Mr. Catalano's employment.

40. Defendants have in fact underpaid Mr. Catalano for work that he performed as an employee of Defendants, between September 26, 2016 to January 17, 2019. Defendants terminated Mr. Catalano's employment on or about January 17, 2019.

41. Defendants used the money earned by Mr. Catalano and other repair technicians who were purported working on a "commission" basis, to pay hourly employees like detailers and assorted in house labor.

42. Defendants additionally have failed and refused to issue a final paycheck to Mr. Catalano after terminating his employment, and have further failed to compensate Mr. Catalano for accrued but unused vacation time.

## Count I
### Violation of Indiana Wage Payment Act and Indiana Wage Claims Act
### Ind. Code § 22-2-5-1 *et seq.* and Ind. Code § 22-2-9-1 *et seq.*

43. Plaintiff hereby incorporates paragraphs 1 - 42 of this Complaint, as if fully set forth herein.

44. At the time of the events described in this Complaint, Defendants employed persons in the State of Indiana.

45. The purported "commissions" that Defendants paid to Mr. Catalano in return for his labor are in fact wages within the Indiana Wage Payment Act and Indiana Wage Claims Act's definition of the same, because the payments relate to the time Mr. Catalano spent performing work for Defendants, were paid on a regular basis for work regularly done, and were not paid in addition to regular wages.

46. Outside of irregular bonuses and holiday pay, the purported "commissions" were the only compensation that Mr. Catalano received in exchange for the work that he performed for the Defendants.

47. Defendants have knowingly and willfully violated the Indiana Wage Payment Act and/or Indiana Wage Claims Act (Ind. Code § 22-2-5-1 *et seq.* and Ind. Code § 22-2-9-1 *et seq.*) by failing and refusing to pay Mr. Catalano the amounts owed to him for work that he performed between September 26, 2016 to January 17, 2019, through the scheme outlined in the foregoing paragraphs of this Complaint.

48. Defendants further have knowingly and willfully violated the Indiana Wage Payment Act and/or Indiana Wage Claims Act (Ind. Code § 22-2-5-1 *et seq.* and Ind. Code § 22-2-9-1 *et seq*) by failing and refusing to pay issue a final paycheck to Mr. Catalano, after terminating his employment.

49. Mr. Catalano has suffered damages as a result of Defendants failure to pay his wages.

50. Mr. Catalano has exhausted his administrative remedies for violation of the Indiana Wage Claims Act, by filing a Complaint with the Indiana Department of Labor on March 22, 2019, which the Indiana Attorney General's office placed with the Plaintiff's counsel for prosecution on March 27, 2019. *See* Ex. F.

51. Under Ind. Code § 22-2-5-2 *et. seq.*, Defendants are liable to Mr. Catalano for liquidated damages not exceeding double the amount of wages due, and a reasonable fee for his attorney or attorneys, for its failure to make payment of wages to Mr. Catalano.

**Count II**
**Violation of the Fair Labor Standards Act, Overtime Requirement**
**29 U.S.C.§ 207(a)(I)**

52. Plaintiff hereby incorporates paragraphs 1 - 51 of this Complaint, as if fully set forth herein.

53. Between September 26, 2016 to January 17, 2019 Plaintiff regularly performed work for Defendants in excess of 40 hours per week.

54. During the time that he worked at Defendants' repair shop in LaPorte, Defendants required Plaintiff to be present and working from 8:00 a.m. until 5:00 p.m.

55. With the knowledge and consent of Defendants' shop managers, during this time Plaintiff regularly worked for the full nine-hour period, without taking any rest or meal breaks.

10

In addition to this, Plaintiff also frequently worked on Saturdays, with the knowledge and consent of Defendants' shop managers.

56. During this time period, Defendants failed to keep records of the clock hours actually worked by Mr. Catalano, and instructed Mr. Catalano not to use the time keeping system present in the LaPorte shop.

57. During the time that he worked at Defendants' repair shop in Hammond, Defendants required the Plaintiff to be present and working from 8:00 a.m. until 5:00 p.m. With the knowledge and consent of Defendants' shop managers, during this time Plaintiff regularly worked for the full 9 hour period, without taking any rest or meal breaks.

58. During the time that he worked at Defendants' repair shop in Cedar Lake, Defendants required the Plaintiff to be present and working from 8:00 a.m. until 5:00 p.m. With the knowledge and consent of Defendants' shop managers, during this time Plaintiff regularly worked for the full 9 hour period, without taking any rest or meal breaks.

59. 29 U.S.C.§ 207(a)(I) requires employers to pay nonexempt employees overtime pay at one and one half times their regular rate for all hours worked in excess of 40 per week.

60. Section 7(i) of the FLSA provides an exemption from this overtime pay requirement for employees working in a "retail or service establishment" if:

> (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

11

29 U.S.C. § 207(i).

61. Plaintiff is not an employee exempt from the overtime requirements of 29 U.S.C.§ 207(a)(I), because Defendants' flat rate compensation system is not a bona fide commission rate.

62. Defendants' system for compensating repair technicians differs significantly from those flat rate systems in the auto repair industry that previously have been determined by the courts to be bona fide commission rates.

63. Defendants did not pay Mr. Catalano a proportion of labor charges billed to its customers. Instead, after issuing the work orders to Mr. Catalano, Defendants' shop managers regularly and systematically entered manual overrides of the labor hours assigned to various repair tasks, such that Defendants charged Gerber Collision & Glass customers for a different number of labor hours than credited and paid to Gerber Collision & Glass repair technicians, including Mr. Catalano.

64. Additionally, Gerber required Mr. Catalano to perform repairs without providing him with work orders for the repairs, such that Mr. Catalano performed work on vehicles for which he received no compensation.

65. Defendants also unilaterally withheld payment of portions of the supposed "commissions" until after the pay period in which the work was complete, so that, no matter how efficiently Mr. Catalano performed his work, there was little variation in the amount of money that Defendants paid Mr. Catalano with each paycheck.

66. All of these practices and policies were performed to Defendants' advantage and to the detriment and harm of the Plaintiff.

67. Plaintiff was actually harmed by Defendants practices, because the result was that he was paid less than he was entitled by law.

68. Defendants violations of 29 U.S.C. § 207(a)(I) were and are willful and without justification. Defendants additionally are liable to Mr. Catalano for liquidated damages and attorney's fees under 29 U.S.C. § 216.

### Count III
### Violation of the Indiana Code § 22-2-2-4, Overtime Requirement

69. Plaintiff hereby incorporate paragraphs 1 - 68 of this Complaint, as if fully set forth herein.

70. Ind. Code § 22-2-2-4 (k) provides that:

"Except as otherwise provided in this section, no employer shall employ any employee for a work week longer than forty (40) hours unless the employee receives compensation for employment in excess of the hours above specified at a rate not less than one and one-half (1.5) times the regular rate at which the employee is employed."

71. Indiana Code § 22-2-2-4 (q) provides that, "[n]o employer shall be considered to have violated subsection (k) by employing any employee of a retail or service establishment for a work week in excess of the applicable work week specified therein, if:

(1) the regular rate of pay of the employee is in excess of one and one- half (1.5) times the minimum hourly rate applicable to the employee under section 2 of this chapter; and

(2) more than half of the employee's compensation for a representative period (not less than one (1) month) represents commissions on goods or services.

72. As detailed in the foregoing paragraphs of this Complaint, Plaintiff regularly worked in excess of 40 hours per week during the time that he was employed with the Defendants, with the knowledge and consent of Defendants' shop managers.

13

73. Plaintiff is not an employee exempt from the overtime requirements of Ind. Code § 22-2-2-4 (k), because Defendants' flat rate compensation system is not a bona fide commission rate.

74. Defendants did not pay Mr. Catalano a proportion of labor charges billed to its customers. Instead, after issuing the work orders, Defendants' shop managers regularly and systematically entered manual overrides of the labor hours assigned to various repair tasks, such that Defendants charged Gerber Collision & Glass customers for a different number of labor hours than credited and paid to Gerber Collision & Glass repair technicians, including Mr. Catalano.

75. Additionally, Defendants unilaterally withheld payment of portions of the supposed "commissions" until after the pay period in which the work was complete, so that, no matter how efficiently Mr. Catalano performed his work, the amount of money that Defendants paid him remained more or less regular.

76. Additionally, Defendants required Mr. Catalano to perform repairs without providing him with work orders for the repairs, such that Mr. Catalano performed work on vehicles for which he received no compensation.

77. All of these practices and policies were performed to Defendants' advantage and to the detriment and harm of the Plaintiff.

78. Plaintiff was actually harmed by Defendants' practices because the result was that he was paid less than he was entitled by law.

79. Defendants violations of Ind. Code § 22-2-2-4 (k) were and are willful and without justification.

80. Under Ind. Code § 22-2-2-9, Defendants are liable to Plaintiff for the amount of his unpaid overtime, and in an equal additional amount as liquidated damages, as well as for costs and attorney's fees.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

## Prayer for Relief

WHEREFORE, Plaintiff requests that the Court enter an order or judgment against Defendants, which includes the following:

A. Compensatory damages for all harm flowing to Plaintiff from Defendants' actions set forth above;

B. Liquidated damages and attorney's fees under 29 U.S.C. § 216;

C. Liquidated damages and attorney's fees under Ind. Code § 22-2-5-2;

D. Liquidated damages and attorney's fees under Ind. Code § 22-2-2-9;

E. Pre-judgment and post-judgment interest on any monetary relief awarded;

F. The costs of bringing this suit, including reasonable attorneys' fees; and,

G. All other relief to which Plaintiff may be entitled at law or in equity.

**KIGHTLINGER & GRAY**

*/signature/*

Jonathan E. Halm (27133-45)
Attorneys for Plaintiff
8001 Broadway, Suite 100
Merrillville, IN 46410
219/769-0413
jhalm@k-glaw.com

**ABRAHAMSON, REED & BILSE**

/s/Harold Abrahamson
Harold Abrahamson (2322-45)
Attorney for Plaintiff
8230 Hohman Ave.
Munster, IN 46312
219/595-5306 ext. 234
aralawfirm@aol.com

16

## JURY DEMAND

Plaintiff hereby demands trial by jury on all of his claims.

KIGHTLINGER & GRAY

Jonathan E. Halm (27133-45)
Attorneys for Plaintiff
8001 Broadway, Suite 100
Merrillville, IN 46410
219/769-0413
(f) 317/423-4107
jhalm@k-glaw.com

**ABRAHAMSON, REED & BILSE**

/s/Harold Abrahamson
Harold Abrahamson (2322-45)
Attorney for Plaintiff
8230 Hohman Ave.
Munster, IN 46312
219/595-5306 ext. 234
aralawfirm@aol.com